**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 99-60112**
_____

**THE PINEY WOODS COUNTRY LIFE SCHOOL; et al,**

Plaintiffs,

**AMOCO; MRS. HENRY BAILEY, JR.; DAVID C. BARTON;**
**DAVID C. BARTON, Trustee; BLACK WARRIOR MINERALS,**
**INC., et al.,**

Plaintiffs-Appellants,

**VERSUS**

**SHELL OIL COMPANY,**

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Southern District of Mississippi
(3:74-CV-307-WS)
_____

May 30, 2000

Before EMILIO M. GARZA, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

This is an appeal of an order of the district court, Judge

Henry T. Wingate presiding, (i) granting Shell Oil's motion for

_____

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

partial summary judgment and dismissing the claims of 56 additional claimants of class membership because the statute of limitations had run on their claims and (ii) denying prejudgment interest.

## I.  BACKGROUND

This case has a tortured procedural history that spans more than two decades and that appears on the dockets of several district judges.  On December 27, 1974, royalty owners from Rankin County, Mississippi, filed this class action against their lessee, Shell Oil Company, claiming that Shell had failed to pay royalty based on the market value of their gas, as required by their oil and gas leases.  The district court tentatively certified the class action on December 15, 1976, and the case was initially tried to the bench before Judge Dan M. Russell, Jr., between November 7 and December 22, 1979.

The district court entered its opinion two years later denying virtually all of the royalty owners' claims.  *See Piney Woods Country Life School v. Shell Oil Co.*, 539 F. Supp. 957 (S.D. Miss. 1982).  Final judgment was entered on July 26, 1982, and the royalty owners appealed.  On appeal, a panel of our Court held that the royalty owners were entitled to be paid royalties based on the market value of the gas, and we remanded the case for a hearing on damages.  *See Piney Woods Country Life School v. Shell Oil Co.*, 726 F.2d 225 (5th Cir. 1984).

On October 10, 1985, the plaintiffs moved for approval of notice to new class members, and the district court, at Shell's urging, held the motion in abeyance. The district court tried the case on remand between January 25 and February 10, 1988, and on April 24, 1989, it entered an order ruling that the royalty owners were not entitled to any damages. On May 1, 1989, the district court dismissed the action, and the royalty owners again appealed.

On June 27, 1990, a second panel of our Court affirmed in part, vacated in part, and remanded the case to the district court for further findings regarding the value of deregulated gas between 1978 and 1986. *See* ***Piney Woods Country Life School v. Shell Oil Co.***, 905 F.2d 840 (5th Cir. 1990). Five years later, on June 6, 1995, the district court entered an opinion ruling that the royalty owners who had market value leases were entitled to additional royalties for production from four wells during the years 1978 through 1982. In its order, the district court denied a request for prejudgment interest. Both parties filed cross-appeals.

On April 21, 1997, a third panel of our Court affirmed the judgment of the district court on the liability issue and remanded for a determination of damages. On May 21, 1997, the plaintiffs renewed their motion for issuance of supplemental notice to class members, which motion was held in abeyance some twelve years earlier. The district court granted the motion on September 17, 1997, and directed the issuance of notice to those persons whose

3

damages claims had grown to a then-applicable jurisdictional threshold of $10,000 during the course of the litigation. Notice was sent to 56 additional royalty owners.

Shell subsequently moved, on September 30, 1998, for partial summary judgment, arguing that the claims of the 56 additional parties to class membership were barred by the applicable statute of limitations. On October 1, 1998, the original plaintiffs renewed their motion for prejudgment interest, but the district court denied the motion on December 14, 1998. On January 11, 1999, the district court granted Shell's motion for partial summary judgment and dismissed the claims of the additional class members, finding that the statute of limitations began to run on December 15, 1978, when the district court had first entered its order granting class certification, and expired six years later in 1984.

## II. DISCUSSION

Appellants raise two substantive issues on appeal: first, whether the district court erred by holding that the statute of limitations expired on the claims of the 56 additional class members; and second, whether the district court erred by denying prejudgment interest to the royalty owners on the unpaid royalties.

With respect to the first of these issues, the district court, in determining that the statute of limitations had expired on the 56 additional class members' claims, noted that the statute of

limitations began to run on December 15, 1978, when the district court entered its order granting class certification. Thus, according to the district court, the six-year statute of limitations expired in 1984.

With respect to the standard of review, Appellants argue for *de novo* consideration of the grant of partial summary judgment, but as Shell properly points out, the district court's interpretations of its own prior rulings and what those orders contemplated are reviewed for an abuse of discretion. The denial of equitable estoppel, even in the context of summary judgment, is also reviewed for an abuse of discretion. *See* **Fisher v. Johnson**, 174 F.3d 710, 713 (5th Cir. 1999).

Shell argues that the 1978 order made no provision for the addition of future class members and that such order finally certified the class as those royalty owners who had already sustained the jurisdictional damages amount of $10,000. All others, according to Shell, were excluded by the class certification order and should have taken steps to protect their interests prior to the expiration of the limitations period in 1984.

Appellants contend that the statute of limitations was tolled by an order of the district court dated December 29, 1986, in which the court postponed considering the propriety of notice to and expansion of the class, reasoning that it should first resolve the

issues of market value and processing costs as well as whether Shell was liable to the plaintiffs at all.

The district court was persuaded that the 56 additional royalty owners were excluded by the December 1978 class certification order and that the class action afforded their claims no protection from the running of the statute of limitations. A key to the district court's holding is that the order upon which Appellants now rely as a tolling mechanism was not even entered until December 29, 1986, some two years after the original statute of limitations had expired (December 1984). The district court also was unpersuaded that there was any basis for finding that equitable toling principles could save the 56 members' claims.

With respect to the second issue presented on appeal, Appellants next contend that the district court erred in failing to award them prejudgment interest when it entered judgment in their favor. According to Miss. Code Ann. § 53-3-39, and this Court's decisions in *First Nat'l Bank v. Pursue Energy Corp.*, 799 F.2d 149 (5th Cir. 1986), and *Exxon Corp. v. Crosby-Mississippi Resources, Ltd.*, 40 F.3d 1474 (5th Cir. 1995), Appellants argue that they are entitled to per annum interest in the amount of 8%.

Shell argues first that the law of the case doctrine prohibits the district court from addressing the issue of prejudgment interest as this Court already affirmed the district court's previous denial of prejudgment interest in 1984. *See Piney Woods*,

6

726 F.2d at 242.  In the alternative, Shell contends that the district court properly determined that § 53-3-39 does not apply and that *First Nat'l Bank* does not control.

Shell's distinction is based upon its contention that § 53-3-39 addresses "held" proceeds, which are due to the royalty owners, and that in this case, the district court determined that Shell "should have charged higher prices" and passed the profit on to royalty owners, but that there was no evidence that it actually did charge more and that it withheld the fruits of doing so from the royalty owners.  Thus, the district court determined, Shell was not obligated by § 53-3-39 to pay prejudgment interest.  Additionally, Shell argues that § 53-3-39 was passed in 1983 and should not be applied retroactively to this case and to the royalty proceeds allegedly due from the 1978-1982 time period.

Shell distinguished *First Nat'l Bank* on the basis that it involved an actual "withholding" of royalty's shares of the proceeds and the alternative payment of fixed rates.  Here, Shell argues that it did pay royalty's shares of proceeds.  The defendant in *First Nat'l Bank* was paying a sulfur royalty based on a fixed rate per ton sold as opposed to one based on the royalty's share of sales proceeds.  Here, Shell notes that its liability, unlike the defendant in *First Nat'l Bank*, was based upon a theoretical amount of sales revenue it never actually received, but which the court determined it should have.

7

Having carefully reviewed each of the issues presented by Appellants and having fully considered the briefs, the record excerpts, the record, and the arguments presented at oral argument, we are persuaded that the judgment of the district court should be affirmed for the reasons stated therein.

## III. CONCLUSION

Based upon the foregoing, the judgment of the district court below is AFFIRMED in all respects.